**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 7:23-cr-00361-KMK |
| | : | |
| -against- | : | |
| | : | |
| MARIO STEWART, | : | |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

---

## SENTENCING SUBMISSION

---

Kevin T. Conway, Esq.
60 South Main Street, Suite 11
New City, New York 10956
(845) 352-0206
kconway@ktclaw.com
*Attorney for Defendant Mario Stewart*

## I.     PRELIMINARY STATEMENT

Mario Stewart (hereinafter referred to as "Mr. Stewart" or "Sergeant Stewart") is 46 years of age, and comes before this Court as a result his first experience with the criminal justice system. Except for the conduct in this case, Mr. Stewart has led an otherwise commendable and law-abiding life. He served with distinction as a Police Officer, retiring with the rank as Patrol Sergeant. He had no record of previous discipline as a Police Officer and was a decorated member of the Emergency Services Unit ("ESU") of the Mount Vernon Police Department since 2010. Members of this Unit responded to situations involving individuals experiencing drug overdoses and mental health crises.

## II.     BACKGROUND

Sergeant Stewart entered a plea one (1) count of Deprivation of Rights Under Color of Law in violation of 18 U.S.C. 242 involving conduct whereby after responding to a call on March 26, 2019, Officers including Sergeant Stewart were trying to assist an individual who was behaving erratically in a parking lot located in Mount Vernon, New York. The individual was not placed under arrest but rather the Officers, including Sergeant Stewart, were attempting to transport the individual to the local hospital for further evaluation via the Emergency Medical Personnel that was also present on the scene. The individual was screaming and appeared to be under the influence of narcotics while refusing the Officers' commands to be secured by medical personnel on a gurney for transport. The Officers were attempting to handcuff and transport the individual in a restraint bag via the ambulance and EMT personnel, however, the individual was physically resisting said efforts as he was only partially restrained in the bag and refused to let go of a metal strap on the restraining bag in order to fully close the bag to safely transport. The Officers were speaking to the

1

individual in both English and Spanish however, said individual was not responsive to any of the commands and was resisting the Officers' efforts to secure him for transport.

Thereafter, Sergeant Stewart repeatedly directed the individual to release the metal strap in the restraining bag which prevented the Officers' from closing the bag and effectuate the transport by the EMT staff by ambulance to the local hospital. Sergeant Stewart viewed the individual's continuing behavior as posing an escalating safety risk to the officers, himself and the EMT staff. He then issued the individual repeated verbal warnings that if he did not release the metal clip buckle he would deploy his taser. It cannot be overstated that all during this time Sergeant Stewart did not use any demeaning or derogatory language directed at the individual who continued to resist physically while ignoring Sergeant Stewart's repeated requests to let go of the buckle to the restraint. As a result, he deployed his taser multiple times, however, the individual continued to remain non-compliant. Eventually, the Officers then attempted to place the individual, still partially in the restraint bag, on the medical gurney where he continued to resist causing him to fall off to the ground before being picked up again and finally transported to the hospital where he was evaluated and released suffering no injuries from the incident.

It is important to note that, at the time of the incident, there was no Police Department policy regarding the permissible number of taser deployments on a non-compliant individual or someone posing a safety risk. Subsequently, Sergeant Stewart, who had both initial and ongoing certification in the use of the taser device, elected not to carry the device following this incident. Upon reflection, Sergeant Stewart felt remorse upon using the taser, but was left with little or no choice with the safety risk of the non-compliant individual as his other choices were to utilize brute physical force including striking the individual, pepper spray device or baton device. None of these other options seemed reasonable to Sergeant Stewart at the time as set forth in his defense mitigation report "in

my heart, I was not trying to hurt him.  All of this is documented on the radio.  I never hid anything--I went back to the office and filled out my paperwork about this incident….What were my options, to put hands on him? To physically hit him? I thought it was okay to use this device." Sergeant Stewart expressed deep empathy for the individual involved and added, "I feel bad about what happened.  I didn't intend to do that.  My goals are to get home safe to my family, make sure the people who work for me do the same, and help the people we serve." (pg. 12 Mitigation Report.)

Sergeant Stewart has retired well short of his twenty (20) years of police service and is a devoted stay at home father of three.  He has a 14-year-old son, Zachery, with special care needs.  Zachery is nearly blind in one eye due to a degenerative disease and will need ongoing surgeries under the care of three eye specialists.  The couple's son requires constant supervision, and Mr. Stewart has remained actively involved in Zachery's life by personally dropping him off and picking him up from school each day as part of his ongoing care.

Probation in this case has recommended a sentence of six (6) months, followed by a one (1) year term of supervised release. This is based upon a consideration of mitigating factors, including Mr. Stewart's family responsibilities, his son's ongoing daily medical and personal care, his honorable career of public service, his strong support system, good employment history and lack of mental health and substance abuse history.  We agree with probation that a downward variance is appropriate, but respectfully suggest that probation's recommendation does not go far enough in its recommendation and a non-incarceration sentence of home confinement is sufficient but not greater than necessary.  It was also noted by Probation that the incident occurred in 2019 and Sergeant Stewart continued to serve until arrested subsequently in 2023, all of which are suggested as a low risk of recidivism and obviate the necessity of a guideline term of imprisonment.  A downward variance is the appropriate sentence for Sergeant Stewart, but urge the Court to sentence Mr. Stewart

3

to a non-guideline sentence of time served and a reasonable fine.

In light of the above, the defense respectfully requests that such sentence be permitted to be served as a non-custodial sentence as served on home arrest as this would be appropriate in this instance due to Sergeant Stewart's son daily physical and medical care. Additionally, were Sergeant Stewart to receive a custodial sentence, as a member of law enforcement he would undoubtedly be transferred outside of the NYC region taking him far away from his family members who depend upon him and he would also be subject to his own safety for internal conditions of 24/7 lock down in any facility housing him.

To support this request, Sergeant Stewart submits a private mitigation report as briefly referenced above advancing this key point:

- Mario Stewart's history and characteristics, including his established well respected career of decorated service, his previous law-abiding life, and the other sentencing factors in 18 U.S.C. 3553(a) weigh against any period of incarceration, probation or supervised release;

### III.   GUIDELINES

The United States Probation Office prepared a Pre-Sentence Report ("PSR") that includes the following calculation under the Federal Sentencing Guidelines ("U.S.S.G."):

| | |
|---|---|
| Base Offense Level………………………. | 10  (18 U.S.C. 242 U.S.S.G. 2H1.1(a)(3)) |
| Special Offense Characteristics: ……………………………………………. | + 6 |
| Victim Related Adjustment ……………… | +2 |
| Adjustment for Role in the Offense: (NONE)…………………………………… | +0 |

4

|                                                                          |                          |
|--------------------------------------------------------------------------|--------------------------|
|                                                                          | +0                       |
| Adjustment for Obstruction of Justice: (NONE)……………………………                | +0                       |
| Chapter 4 Enhancements: (NONE)                                           |                          |
| Acceptance of Responsibility……………..                                      | -2 (U.S.S.G §3 E1.1)     |
| Acceptance of Responsibility……………..                                      | -1 (U.S.S.G. § 3E1.1(b)) |
| ADJUSTED OFFENSE LEVEL                                                   | 17                       |

The PSR correctly notes that there are no aggravating factors warranting a higher adjusted offense level. Based on a total offense level of 17 and a criminal history category of I, the Guidelines possible period of imprisonment is 24 to 30 months. (PSR p. 19).

### STANDARD OF REVIEW

"The standard of review for sentencing is one of 'reasonableness.'" *United States v. Cossey*, 632 F.3d 82, 86 (2d Cir. 2010) (*citing United States v. Booker*, 543 U.S. 220, 260–62 (2005)). "To impose a procedurally reasonable sentence, a district court must (1) normally determine the applicable Guidelines range, (2) consider the Guidelines along with the other factors under § 3553(a), and (3) determine whether to impose a Guidelines sentence or a non- Guidelines sentence." *Id*. (*citing United States v. Villafuerte*, 502 F.3d 204, 206–07 (2d Cir.2007)).

As the Court is well aware, following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the Guidelines are now advisory. "The Guidelines are not only *not* mandatory on sentencing courts; they are also not to be *presumed* reasonable." *Nelson v. United States*, 129 S. Ct. 890, 891 (2009) (emphasis added).

While "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," the Guidelines are merely the "starting point and the initial benchmark[,] . . . not the only consideration." *Gall v. United States*, 552 U.S. 38, 49 (2007). Rather,

5

the Court must "consider all of the § 3553(a) factors" and "must make an individualized assessment based on the facts presented." *Id*. at 49-50. In imposing a sentence, the factors in 18 U.S.C. § 3553(a) must be considered. *Kimbrough v. United States*, 552 U.S. 85, 101 (2007). Those factors are:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed:
    (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B)  to afford adequate deterrence to criminal conduct;
    (C)  to protect the public from further crimes of the defendant; and
    (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)  the kinds of sentences available;
(4)  the advisory guideline range;
(5)  any pertinent policy statements issued by the Sentencing Commission;
(6)  the need to avoid unwarranted sentence disparities; and
(7)  the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Ultimately, the Court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).

"Courts enjoy considerable discretion in identifying the grounds that can justify a non-Guidelines sentence." *United States v. Jones*, 531 F.3d 163, 172 (2d Cir. 2008). The Court may, for instance, "vary from Guideline ranges based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough,* at 101 (internal modifications omitted). In exercising this discretion, district courts cannot presume that the advisory Guidelines range is reasonable. *See Rita v. United States*, 551 U.S. 338, 351 (2007). The Court must "consider all of the § 3553(a) factors" and "must make an individualized assessment based on the facts presented." *Gall*, 128 S. Ct. at 596-97.

Even on appellate review, there is no presumption of reasonableness for the Guidelines range. *See United States v. Fernandez*, 443 F.3d 19, 28 (2d Cir. 2006). Accordingly, "the amount

6

by which a sentence deviates from the applicable Guidelines range is not the measure of how reasonable a sentence is." *United States v. Dorvee*, 616 F.3d 174, 184 (2d Cir. 2010) (citing *Gall*, 552 U.S. at 46-47); *see also United States v. Ovid*, No. 09-CR-216 JG, 2010 WL 3940724, at *1 (E.D.N.Y. Oct. 1, 2010) ("Indeed, in some cases the fair sentence can drift quite far away from the advisory range, which is, after all, but one of eight factors the sentencing judge must consider.").

In short, *Booker* and later *Kimbrough* and *Gall*, have largely restored the sentencing court's traditional role in sentencing - to evaluate each defendant on an individualized basis, rather than to mechanically apply an abstract set of rules. *See Jones*, 531 F.3d at 182; *United States v. Regalado*, 518 F.3d 143, 146-47 (2d Cir. 2008) (*per curiam*).

## IV.     DISCUSSION

**A.     A NON-GUIDELINES SENTENCE IS FULLY WARRANTED IN LIGHT OF THE SENTENCING FACTORS SET FORTH IN 18 U.S.C. § 3553(a)**

Imposing a sentence on a fellow human is a formidable responsibility. It requires a Court to consider, with great care and sensitivity, a large complexity of facts and factors. The notion that this complicated analysis, and moral responsibility, can be reduced to the mechanical adding-up of a small set of numbers artificially assigned to a few arbitrarily selected variables conflicts with common sense. *United States v. Gupta*, 904 F. Supp.2d 349, 350 (S.D.N.Y. 2012), aff'd, 747 F.3d 111 (2d Cir. 2014).

When imposing a sentence, the Court must "consider **all** of the § 3553(a) factors and must make an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. at 49. It is this individualized assessment, not a mechanical application of the Guidelines, which determines what a reasonable sentence is in any given case. *See United States v. Jones*, 531 F.3d at 171-72. "'[T]he nature and circumstances of the offense and the history and characteristics of the defendant,'". . . implicates offense and offender characteristics that are too numerous and varied,

7

and occur in too many different combinations, to be captured, much less quantified, in the Commission's Guidelines Manual." *United States v. Ovid*, 2010 WL 3940724, at *1.

Application of the factors set forth in § 3553(a), show a sentence of non-custodial term with a term of supervised release and a reasonable fine not to exceed $10,000 is fair, reasonable, and sufficient but not greater than necessary to achieve the purposes of sentencing.

**B.     The Advisory Guidelines Fail to Provide Guidance as to an Appropriate Sentence**

The Sentencing Guidelines range is only one of eight factors that the Court must consider in determining an appropriate sentence. *Ovid*, at *1; 18 U.S.C. § 3553(a).

Here, a mechanical application of the Guidelines results in a disproportionate sentencing range that fails to achieve the goals of sentencing. This Court should not place an over emphasis on the Guidelines range. Instead, it should sentence Mr. Stewart to a non-Guidelines non-custodial sentence of home custody, a term of supervised release and a reasonable fine. This sentence is supported by consideration of all the sentencing factors of § 3553(a).

**C.     Mr. Stewart's History and Characteristics Warrant a Non-Guidelines Non-Custodial Sentence Below the Guidelines Range**

In determining an appropriate sentence, the Court must examine the history and characteristics of the defendant. 18 U.S.S.G. § 3553(a).  The defendant's "immediate misconduct" must be "assessed in the context of his overall life hitherto" with credit given for "the good he has done." *Adelson*, 441 F. Supp. 2d at 513-14. "This elementary principle of weighing the good with the bad . . . was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor, 'the history and characteristics of the defendant.'" *Id*. at 514.

Weighing Mr. Stewart's aberrant behavior against the exemplary life he has otherwise led and the good he has done, demonstrates that a sentence reflecting a downward variance from the

8

Guidelines range to a non-custodial sentence of supervised release and a fine is sufficient but not greater than necessary to serve the purposes of sentencing.

    **D.    A Sentence Substantially Below the Guidelines Range will Promote Respect for the Law and Provide Just Punishment**

A sentence below the Guidelines range will serve the ends of "just punishment" under 18 U.S.C. § 3553(a)(2)(A). Mr. Stewart's first and only entanglement with the criminal justice system has shaken him to his core. Even now, before the imposition of sentence by the Court, he has suffered significantly because of this criminal case. He has retired early and not received the benefit he otherwise would have been entitled to as a twenty (20) year veteran police officer with an otherwise unblemished career. His police service continued without incident as this case was brought from an incident that occurred some four years prior. Since his arrest, he has been on supervised release and location monitoring without incident. Supervision, along with his retirement, which Mr. Stewart has experienced for over two years, is a form of punishment. Sentencing Mr. Stewart to up to a term of 24-30 months incarceration along with an additional to up to 1 further or more years of supervision is unreasonable.

When a police officer goes to prison, they are placed in protective custody to ensure their safety due of the likelihood of assault. This is because they may be vulnerable to violence or threats from other inmates due to their former profession. Based on prior law enforcement, defendants who have been incarcerated will be placed in solitary confinement for up to 23 hours a day. They would also be designated to a region outside of the New York Metropolitan area. Incarcerating Mr. Stewart out of the Mount Vernon area, would make it more difficult for his family to visit him.

As the Court knows, it is universally recognized that probation is a form of punishment for a criminal act. It is not a pass or a break. It is punishment. "Probation, like incarceration, is 'a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of

9

guilty."' *Griffin v. Wisconsin*, 483 U.S. 868, 874… probation is "one point… on a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service." 483 U.S., at 874.... Inherent in the very nature of probation is that probationers "do not enjoy 'the absolute liberty to which every citizen is entitled.'" *United States v. Knights*, 534 U.S. at 112 (2001). See also *United States v. Ellenbogen*, 390 Fed. 2d 537, 543 (1968). In this case, that particular type of punishment is the most appropriate for this defendant.

Mr. Stewart is now a convicted of a crime. He has let down his family and friends. Following the issuance of press releases by the Government and subsequent news stories about this case, Mr. Stewart's reputation in his community has suffered significant damage. For a man such as Mr. Stewart, who has led an otherwise law-abiding life and devoted career of otherwise unblemished public service to a respectable career, these consequences alone represent significant punishment. *See United States v. Myers*, 353 F. Supp. 2d 1026, 1031 (S.D. Iowa 2005) (noting that the stigma associated with a conviction and being known as a criminal by family, friends and society is "no small punishment" for one known for high moral standards and character).

E.   A Sentence Below the Guidelines Range will Provide Adequate Deterrence

Here, we agree with probation that the Court grant a substantial downward variance. A sentence of a non-custodial sentence and supervised release is a sufficient but not greater than necessary.

A sentencing court must also consider the need for the sentence imposed to "afford adequate deterrence to criminal conduct." 18 U.S.C. §3553(a)(2)(B). A sentence below the Guidelines range will have a substantial deterrent effect on the public. Courts and commentators have recognized that, in cases such as this, the publicity and stigma associated with conviction deters similar crimes, even where a non-custodial sentence is imposed. *See e.g.*, *United States v.*

*Robinson*, 2014 WL 1400197, at *7 (D.N.J. Apr. 9, 2014) (concluding that in a white-collar case "probation best addressed the need for deterrence").[1]

The fact of Mr. Stewart's prosecution, and the devastating reputational and professional damage associated therewith have been well publicized and will have a significant deterrent effect on others. A non-Guidelines non-incarceration sentence substantially below the Guidelines range is therefore fully consistent with the need to provide general deterrence.

The need for specific deterrence is also a factor the Court must consider in fashioning an appropriate sentence. *See* 18 U.S.C. § 3553(a)(2). Respectfully, there is no such need. The allegations are uncharacteristic of Mr. Stewart's otherwise exemplary and law-abiding life. At 46 years old, Mr. Stewart has lived as an upstanding and productive member of society with his public service record. He has dedicated himself to an honorable profession of policing and helping others in the community that he has served. Because of his conviction, his life has been forever altered and he has suffered significant consequences, which he has weathered head-on with his characteristic integrity and optimism.

There is thus simply nothing about the offense or Mr. Stewart's background which indicates that he poses any risk of recidivism. He is surrounded by family who continue to support him.

A non-Guidelines non-incarceration sentence below the Guidelines range and a sentence of a reasonable fine will more than adequately serve the goals of deterrence, particularly since the need to deter Mr. Stewart specifically is non-existent.

---

[1] Richard S. Frase, *Punishment Purposes*, 58 STAN. L. REV. 67, 80 (2005) (concluding that "[w]hite-collar and regulatory offenders are more likely to be deterred even by . . . modest penalties; such offenders have . . . much to lose from being convicted, regardless of the penalty."); Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White-Collar Crime*, 8 CORDOZO J. OF CONFLICT RESOL. 421, 449-450 (2007)

### F. Mr. Stewart's Unique Characteristics Support he will not Recidivate

In May of 2004, the United States Sentencing Commission published a report on recidivism entitled "*Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*," (available at http://www.ussc.gov/publicat/Recidivism/200405), as a component of its fifteen year report [hereinafter Fifteen Year Report] on the U.S. Sentencing Commissions Legislative Mandate. The report indicated that it was the first opportunity to assess the guidelines as they related to recidivism and that it was an effort to follow the legislative directions to assess the performance of the guidelines as they evolved based on empirical data. *Id*. at 2; USSG Chapter 1, Part A. The study found that rate of recidivism was lower for offenders who held stable employment in the year before the offense and had stable relationships. *Id*. at 12. Mr. Stewart has no criminal convictions.

Mr. Stewart's unique factors including his immediate family responsibilities militate against the need for the imposition of a sentence within the advisory guidelines range. Based upon the empirical data collected by the United States Sentencing Commission, Mr. Stewart's offense conduct and recent employment status indicate that if he received a sentence below the advisory guideline range, he would be among the least likely to recidivate.

The fact that he is in several categories that the Commission has studied that have the lowest rate of recidivism would support the premise that a sentence based solely on deterrence is unnecessary here. Mr. Stewart's presence in those categories with the lowest rates of recidivism would indicate that he would not be a danger to commit further crimes.

As Mr. Stewart is in those categories with the lowest rates of recidivism establishes that applying a guidelines sentence would cause punishment over that required.

The mechanical application of the advisory guidelines would ignore all of Mr. Stewart's unique history and characteristics that the Court must consider under 18 U.S.C. § 3553.

## CONCLUSION

Counsel for Mr. Stewart respectfully urges that the Court should impose a non-Guidelines non-custodial sentence of home incarceration. Such a sentence is fair and reasonable and sufficient, but not greater than necessary, to achieve the goals of sentencing under 18 U.S.C. § 3553(a).

Dated: July 2, 2025

Respectfully submitted,
*Attorney for Defendant Mario Stewart*

KEVIN T. CONWAY, ESQ.

By: _____
Kevin T. Conway, Esq.
60 South Main Street - Suite 11
New City, New York 10956
T. (845) 352-0206
kconway@ktclaw.com

TO:

Clerk of the Court
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601
*(Via ECF)*

Honorable Kenneth M. Karas, USDJ
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601
*(Via Email and ECF)*

Jared D. Hoffman, Esq.
Assistant United States Attorney
Southern District of New York
300 Quarropas Street
White Plains, New York 10601
*(Via Email and ECF)*